Balsinger, Appellant, *v.* Zelienople Borough.

Argued March 13, 1968. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*William C. Robinson,* with him *Henninger & Robinson,* for appellant.

*John L. Wilson,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, April 16, 1968:

On November 8, 1965 Vincent Balsinger was nominated by Council of the Borough of Zelienople as the

borough's chief of police, his duties to commence on November 15, 1965. The police civil service commission on November 16, 1965 certified that Balsinger was qualified for the appointment, the certification being received by the borough secretary on December 6, 1965.

On December 13, 1965 the borough council appointed Balsinger chief of police for a probationary period of six months beginning December 13, 1965. On June 13, 1965, this being the end of the probationary period, the borough council, at a regularly scheduled meeting attended by Balsinger, voted down, by a vote of 4 to 3, a motion to approve his permanent appointment as police chief. They approved, however, a motion to extend his probationary period for another six months. After the voting Balsinger directed some remarks to council, the exact tenor of which is in dispute. The secretary's minutes of the meeting indicate he stated he resigned. Balsinger says he said he refused to accept another probationary period and that, as far as he was concerned, the six-months "terminates tonight".

In spite of his declared refusal to remain on any probationary status, Balsinger continued to perform the services of police chief. On June 24, the borough council reconvened and authorized the following communication, which was delivered to Balsinger: "By formal action of the Council of Zelienople Borough, in special meeting June 24, 1966, I was directed to notify you that you will not receive a permanent appointment as a police officer for Zelienople Borough and that your probationary appointment ceased as of June 13, 1966."

The borough also authorized payment of wages to Balsinger for the period from June 13 to June 27, provided he would agree in writing that "such payment shall not be construed in fact or law to be an admis-

sion on the part of the Borough of Zelienople that Vincent Balsinger was recognized or appointed by the Borough as a permanent policeman."

Balsinger refused the offer, maintaining that he was now the permanent police chief of the borough because he had not been given written notice at the end of the six month probationary period that he had not received the permanent appointment. The Borough Code provides: "All original appointments to any position in the police force or as paid operators of fire apparatus shall be for a probationary period of six months, but during the probationary period an appointee may be dismissed only for a cause specified in section 1177 of this act. If at the close of a probationary period the conduct or fitness of the probationer has not been satisfactory to the council, the probationer shall be notified in writing that he will not receive a permanent appointment. Thereupon, his appointment shall cease, otherwise his retention shall be equivalent to a permanent appointment." 1927, May 4, P. L. 519, §1180, amended 1947, July 10, P. L. 1621, §39."

Balsinger sought to have the borough's civil service commission approve his contention, but the commission decided that Balsinger had never been permanently designated chief of police.

Balsinger then appealed to the Court of Common Pleas of Butler County which upheld the council and the civil service commission. He is now on appeal to this Court. We find that, under all the circumstances, here only succinctly related, the written notice of June 24, 1966, only eleven days after the council meeting attended by Balsinger at which it voted not to make him permanent police chief, was a sufficient compliance with the requirement of written notice.

When Balsinger voluntarily continued to assume the duties of police chief after June 13 though he knew his permanent appointment had been rejected and when, after, by his own admission, he had informed council he was not interested in any further probationary period of employment, he assumed those duties of his own volition and without protection of civil service laws.

Balsinger asks that if permanency of office was effectively rejected and terminated as of June 13, 1966 why was further councilmanic action necessary and why was there an offer of payment made for the services performed by him after that date? The answer is that his "holding over" after June 13 made it necessary for council to meet to determine what action should be taken by his occupying a post which, by law, had, for him, disappeared. The offer of two weeks' pay as already stated was expressly conditioned on an acknowledgment that this should not be construed in any way as evidence of permanent appointment.

As already stated, the borough's letter of June 24, 1966 constituted a sufficient compliance with the requirement of written notice that Balsinger would not receive the permanent appointment and that his probationary period ceased June 13, 1966. Although the letter states that it was being sent as a result of formal action of council at a special meeting of that day, this statement was really superfluous since the notice did not have to be authorized by any further meeting. The fact that a special meeting was held cannot detract from the legal effect of the June 13, 1966 meeting at which it was voted not to make Balsinger's appointment permanent, especially since the June 24 meeting was made necessary by Balsinger's attempt to hold over in the office of police chief.

While it is true the statute requires that written notice be given a probationer at the end of his probationary period, if he is not to be retained, it does not say that the notice shall be instantaneous. Reasonableness of time is always a factor in the interpretation of a statutory provision. What is reasonableness depends on the circumstances of each case. We find that a notice dated June 24th of a probationary period which ended on June 13th, did not constitute an unreasonable delay in view of the unusual events which occurred at, and immediately following, the council meeting of June 13th.

Order affirmed.